BEYER ET AL., APPELLEES, v. DONALDSON ET AL., APPELLANTS.*

[Cite as Beyer v. Donaldson (1978), 57 Ohio App. 2d 24.]

(No. C-76187—Decided March 8, 1978.)

*Mr. Donald E. Hardin,* for appellees.

*Mr. Thomas A. Luebbers* and *Mr. Jan M. Holtzman,* for appellants.

*Per Curiam.* This cause came on to be heard upon the appeal; the transcript of the docket and journal entries; the original papers and pleadings from the Court of Common Pleas of Hamilton County including the transcript of the proceedings before the Civil Service Commission of the city of Cincinnati; the transcript of the proceedings before the Court of Common Pleas of Hamilton County;

---

*Reporter's Note: A motion to certify the record was overruled by the Supreme Court of Ohio, July 6, 1978.

and the assignments of error, the briefs and arguments of counsel.

The appeal is from the judgment and order of the Court of Common Pleas reversing a decision of the Civil Service Commission of Cincinnati which sustained suspensions from duty of the appellees.

The appellees were members of the Cincinnati Police Division assigned until December 19, 1975, to the Vice Control Bureau. On December 18, 1975, the Grand Jury of Hamilton County returned several indictments charging appellees Beyer, Ebert, Hawthorne and Easterling with the crimes of tampering with evidence, obstructing justice, bribery and soliciting; appellees Beyer and Simon with perjury, tampering with evidence and obstructing justice; appellee Hummeldorf with bribery; and appellee Simon with theft, procuring and obstructing justice.

Resultantly, on December 19, 1975, each of the appellees was suspended from his position as a police officer by the acting Chief of Police and informed that a hearing on the interdepartmental charges of dishonesty and failure of good behavior set forth in the notices of suspension would be held before the Safety Director of the city on December 22, 1975.

At the hearing before the Safety Director, the appellees were informed that "inefficiency" had been added as a charge additional to those preferred earlier. The Safety Director recommended, after the hearing, that the City Manager suspend the appellees without pay pending the disposition of the criminal charges set forth in the indictment. Service of notice of the City Manager's order of suspension in harmony with the recommendation and giving inefficiency, violation of R. C. 124.34 and Rule 15 of the Rules of the Civil Service Commission as the reasons therefor was obtained upon appellees by registered mail.

On January 6, 1976, the appellees appealed their suspensions to the Civil Service Commission. Those appeals were heard on January 31, 1976, and the Commission by a unanimous vote sustained the suspensions.

The suspended officers then appealed the Commis-

sion's decision to the Court of Common Pleas, where it was considered as one upon law and fact pursuant to R. C. 124.34. The court announced its decision by letter dated March 12, 1976, which subsequently was filed as the court's findings of fact and conclusions of law in the case. *Inter alia,* the court found that the Chief of Police has exclusive authority to suspend a police officer and to specify charges relative thereto, and that the decision of the Civil Service Commission was not supported by reliable, substantive and probative evidence.

The court in reversing the decision of the Commission ordered that the officers be reinstated immediately on a paid basis to their positions within the police division and that they receive all their back pay and fringe benefits from the date of their suspensions.

This court, after the appeal of the city was filed, granted, in part, a stay of that judgment.

In the course of oral argument, before the submission of the cause *sub judice* upon its merits, counsel for the appellant in response to inquiries by this court concerning the disposition of the several indictments made statements which have convinced us that with respect to some of the suspended officers the appeal is moot or, alternatively, has been abandoned.

The City Solicitor, with admirable candor, affirmed the position of the city taken originally, and restated in its brief that the officers would be entitled to back pay if the criminal charges upon which the suspensions were based were not sustained and if no further administrative action was taken against them. He indicated further that appellees Ebert, Hawthorne and Easterling had been acquitted of the charges in the indictments and that the city intends upon a proper application from them to pay their claims.

Resultantly, we find, *sua sponte,* that the appeal of the city of Cincinnati herein as it pertains to such appellees has been abandoned, is moot and is, accordingly, dismissed.

The first of the two errors assigned states:

"The trial court erred in finding that the chief of po-

lice is the exclusive authority for causing suspension of a police officer and the exclusive authority to specify the charges leading to such suspension where in a charter municipality there is a provision in the charter which makes it the duty of the city manager to make all appointments and removals in the administrative and executive service of the city.''

Pursuant to the provisions of Section 7, Article XVIII, of the Ohio Constitution[1], the city of Cincinnati has adopted a charter under which it exercises certain powers of local self-government.[2] In deciding the case below, the court took judicial notice of the provisions of the Charter of the city of Cincinnati.

Section 3, Article IV, of the Charter of the city of Cincinnati provides, *inter alia,* that the City Manager, a personage appointed by the City Council, shall act as chief conservator of the peace within the city and make all appointments and removals in the administrative and executive service except where otherwise provided in the Charter.

Section 3, Article V, of the Charter, provides in part that ''[E]xcept as provided in this charter, the council shall have no power to modify the provisions of the laws of the State of Ohio now or hereafter in effect relating to the civil service and civil service commissions.''

It is the city's position that when Section 3, Article IV and Section 3, Article V, are read in *pari materia* it must be concluded that the City Manager has the power to make all appointments and removals in the administrative and executive service provided that such appoint-

[1]Section 7, Article XVIII, of the Ohio Constitution provides:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this Article, exercise thereunder all powers of local self-government."

[2]Section 3, Article XVIII, of the Ohio Constitution provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with the general laws."

ments and removals are made in harmony with the civil service laws of Ohio."

R. C. Section 737.12 provides *inter alia* that:

"The chief of police and the chief of the fire department shall have exclusive right to suspend any of the deputies, officers, or employees in their respective departments and under their management and control, for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable and just cause.

"If any such employee is suspended, the chief of police or the chief of the fire department, as the case may be, shall forthwith certify such fact in writing, together with the cause for such suspension, to the director of public safety, who, within five days from the receipt thereof, shall proceed to inquire into the cause of such suspension and render judgment thereon. * * *"

The Supreme Court of Ohio in deciding *State, ex rel. Canada, v. Phillips* (1958), 168 Ohio St. 191, held that "[t]he appointment of officers in the police force of a city represents the exercise of a power of local self-government within the meaning of those words as used in Sections 3 and 7 of Article XVIII of the Ohio Constitution,"⁴ and that "[t]he words, 'as are not in conflict with general laws' found in Section 3 of Article XVIII of the Constitution, modify the words 'local police, sanitary and other similar regulations' but do not modify the words 'powers of local self-government.'"⁵

The appellants submit that the establishment and operation of a police department by a city is an exercise of the power of local self-government contemplated by the Constitution and, accordingly, the choice of a municipality to provide police protection cannot be interfered with by the state.

---

³The appellants direct our attention specifically to R. C. Chapter 124 (Department of Administrative Services—Personnel).

⁴Paragraph 1 of the syllabus.

⁵Paragraph 4 of the syllabus. See also *State, ex rel. Mullin*, v. *Mansfield* (1971), 26 Ohio St. 2d 129.

They postulate further that the provision of the City Charter placing upon the City Manager the duty to make all appointments and removals in the administrative and executive service except as otherwise provided in the Charter or by the civil service laws of Ohio takes precedence over the provisions of R. C. 737.12.

We agree.

*A fortiori,* the power to remove includes the power to suspend. Resultantly, where, as here, the charter of a city obligates the city manager to make all appointments and removals in the administrative and executive service of that city provided such are made in consonance with state laws respecting civil service the power of the city manager supersedes the provisions of a statute relating to the suspension of police officers by a chief of police.

Accordingly, the first assignment is well taken because the court below erred in finding that the Chief of Police of the city of Cincinnati is the exclusive authority to cause the suspension of and to specify charges against a police officer.

The second assignment of error states:

"The trial court erred in its ruling that the decision of the Civil Service Commission of Cincinnati was not supported by reliable, substantive and probative evidence."

In the penultimate paragraph of its letter of March 12, 1976, which subsequently became the findings of facts and conclusions of law in the case *sub judice,* the court held that the decision of the Civil Service Commission was not supported by reliable, substantive and probative evidence.

The pivotal issue here is whether the appointing authorty established by the greater weight of the evidence that it had sufficient ground under state law and the regulations of the Civil Service Commission of Cincinnati to suspend a police officer under indictment for crimes allegedly committed in performance of his duties pending a disposition of the charges.

Reduced to its essence, the testimony of the Chief of Police before the Commission was that his contacts with

the public, the totality of his experience as a police officer and his specialized education had convinced him that an officer under indictment cannot function effectively until the charges have been adjudicated because there is an element of mistrust arising from the accusations of violations of the very laws the officer is charged with enforcing which inevitably extends throughout a police department and which reflects a public attitude that police will countenance violations of law by fellow officers while prosecuting the same violations by members of the citizenry.

This court addressed a question markedly similar to that posed by the second assignment of error in *Ecker* v. *Cincinnati* (1936), 52 Ohio App. 422.

In that case, a detective in the police department of the city of Cincinnati was indicted for the crime of bribery, suspended by the Chief of Police but never brought to trial because the indictment was nolled. After his reinstatement as a police officer, he brought suit to recover the salary not paid to him during the several months of his suspension.

In affirming a judgment for the city in the case, this court said:

"The first question raised by plaintiff in error, Ecker, challenges the right of the chief of police to suspend him under the circumstances. Plaintiff in error Ecker further attacks the suspension on the grounds that he did nothing to cause the suspension; that he is presumed innocent of crime until proven guilty, and that the indictment, in view of the *nolle prosequi,* is an admission that he was not guilty at the time of his suspension of the offense charged in the indictment. This in effect challenges the discretion of the chief of police, who has, under the laws of the city, the power of suspension. On this proposition it is not a question of the guilt or innocence of the accused under the indictment. The question confronting the chief of police, upon which the action of suspension is grounded, lies in the fact that the police officer was indicted by at least 12 citizens of a grand jury, and that there

was extended publicity in the city of the grand jury's indictment.

"The character of the work of a police officer would certainly require the chief of police to take cognizance of the situation. The chief of police could not allow the police officer to perform police work in the city of Cincinnati while under indictment for a bribery charge. To do so would be an affront to the people of the city, and, as well, a failure on the part of the chief of police to properly perform his duties as such officer. Under the circumstances the chief of police did not abuse the discretion vested in him, but exercised a sound discretion in the administration of his office in suspending the officer pending the outcome of the indictment.'"[8]

We see no reason to deviate from the path established more than four decades ago. The logic expressed is just as compelling now as then and is fully supportive of the conclusions reached by the authorities in the instant case.

While it is true as appellees contend and the record reflects that not all Cincinnati police officers accused of or convicted of crime in the past have been suspended from duty, we hold that where, as here, officers of a vice control bureau have been indicted for crimes including tampering with evidence, obstructing justice, perjury and bribery the suspension of those officers pending a disposition of the charges does not constitute an abuse of discretion and a finding that the appointing authority had failed to establish sufficient ground for such suspension is erroneous.

For the reasons stated and upon the rationale of *Ecker* v. *Cincinnati, supra,* pertinent to the issue before us, we find the second assignment of error to be well taken.

The judgment of the Court of Common Pleas of Hamilton County, as it pertains to appellees Beyer, Simon and Hummeldorf is reversed and a final judgment is entered for the appellants pursuant to App. R. 12(B), there being no demonstration by the record that any of the appel-

---

[8]*Ecker* v. *Cincinnati,* at 423-24.

lees was denied any of the rights afforded by R. C. 124.-34.[7]

*Judgment reversed.*

SHANNON, P. J., KEEFE and BLACK, JJ., concur.

---

[7]R. C. 124.34 provides in pertinent part:

"The tenure of every officer or employee in the classified service of the state and the counties, civil service townships, cities, city health districts, general health districts, and city school districts thereof, holding a position under this chapter of the Revised Code, shall be during good behavior and efficient service and no such officer or employee shall be reduced in pay or position, suspended, or removed, except as provided in section 124.32 of the Revised Code, and for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior or any other acts of misfeasance, malfeasance, or nonfeasance in office. * * *

"In the case of the suspension for any period of time, or demotion, or removal of a chief of police or a chief of a fire department or any member of the police or fire department of a city or civil service township, the appointing authority shall furnish such chief or member of a department with a copy of the order of suspension, demotion, or removal, which order shall state the reasons therefor. Such order shall be filed with the municipal or civil service township civil service commission. Within ten days following the filing of such order such chief or member of a department may file an appeal, in writing, with the municipal or civil service township civil service commission. In the event such an appeal is filed, the commission shall forthwith notify the appointing authority and shall hear, or appoint a trial board to hear, such appeal within thirty days from and after its filing with the commission, and it may affirm, disaffirm, or modify the judgment of the appointing authority. An appeal on questions of law and fact may be had from the decision of the municipal or civil service township civil service commission to the court of common pleas in the county in which such city or civil service township is situated. Such appeal shall be taken within thirty days from the finding of the commission."