**CITY OF AKRON, Appellant,**

v.

**WILLIAMS, Appellee.**

[Cite as *Akron v. Williams* (1996), 109 Ohio App.3d 848.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17337.

Decided March 20, 1996.

*Max Rothal*, Akron Law Director, and *Elaine B. Davidson*, Assistant Law Director, for appellant.

*Leonard W. Hazelett*, for appellee.

DICKINSON, Judge.

The city of Akron ("city") has appealed from an order of the Summit County Court of Common Pleas that reversed a decision of the Akron Civil Service Commission ("commission") and ordered reinstatement of appellee Elmore Williams, Jr., as a police officer. The city argues that the common pleas court incorrectly reversed the commission's decision on the ground that the city had violated R.C. 737.12, because that statute was superseded by the Akron City Charter. The city further argues that the common pleas court (1) abused its discretion when it reversed the commission's decision on the ground that the city had violated R.C. 737.12 because that decision was otherwise supported by a preponderance of reliable, probative, and substantial evidence; (2) erred as a matter of law when it considered Williams's argument that the city had violated R.C. 737.12 because he had not raised that argument before the commission; and (3) erred when it wrote in its decision that the Akron Law Director had dismissed Williams.[1] This court reverses the judgment of the common pleas court because the provision of the Akron City Charter that empowers the mayor to review the dismissal of a city police officer prevails over the provision of R.C. 737.12 that gives such authority to a city's director of public safety.

I

Williams was a police officer with the Akron Police Department. On August 12, 1994, he submitted to a random urinalysis drug test. That test came back

---

1. The city's assignments of error have been rearranged for ease of discussion.

positive for marijuana. On August 19, 1994, the chief of police informed Williams that he was discharged effective that day for having violated the department's rule against drug use and for conduct unbecoming an officer. Pursuant to the Akron Charter, the chief of police certified to the mayor the reasons for the dismissal and the Akron Law Director, as acting mayor, held a hearing.[2] On October 3, 1994, the acting mayor affirmed the dismissal.

Williams appealed his dismissal to the civil service commission. The commission held a hearing on December 14, 1994, and denied Williams's appeal on December 16, 1994.

Williams appealed the commission's decision to the Summit County Court of Common Pleas. He raised three assignments of error: (1) the city violated R.C. 737.12 by having the mayor rather than the city's director of public safety review his dismissal; (2) the city improperly based its decision to dismiss him on factors not listed in his termination notice; and (3) the city abused its discretion when it dismissed a veteran police officer after one positive drug test. On June 26, 1995, the common pleas court reversed the decision of the commission. The court held that Williams's dismissal was improper because the city had failed to follow mandatory procedures set forth in R.C. 737.12.[3] The city has timely appealed to this court.

## II

### A

The city's first assignment of error is that the common pleas court incorrectly reversed the commission's decision on the ground that the city had violated R.C. 737.12. Williams argues that the city violated R.C. 737.12 by having the city law director, as acting mayor, review his dismissal. R.C. 737.12 provides that a city's director of public safety shall review the suspension or dismissal of a city police officer, providing that:

"The chief of police and the chief of the fire department shall have exclusive right to suspend any of the deputies, officers, or employees in their respective

---

2. Section 55(d) of the Akron City Charter provides:

   "If the Mayor [is] temporarily absent from the City, temporarily disabled or incapacitated from performing the duties of his office, or if a temporary vacancy shall occur in the office of Mayor for any other reason, the Director of Law shall be the Acting Mayor, or in his absence the Director of Finance shall become the Acting Mayor, or in his absence the Director of Public Service shall become [the] Acting Mayor. The Acting Mayor shall have the same powers and duties as prescribed for the Mayor during the period of the Mayor's absence, disability, incapacity, or vacancy."

3. The common pleas court did not address Williams's second and third assignments of error.

departments and under their management and control, for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable and just cause.

"If any such employee is suspended, the chief of police or the chief of the fire department, as the case may be, shall forthwith certify such fact in writing, together with the cause for such suspension, to the director of public safety, who, within five days from the receipt thereof, shall proceed to inquire into the cause of such suspension and render judgment thereon. Such judgment, if the charge is sustained, may be either suspension, reduction in rank, or dismissal from the department. Such judgment shall be final except as otherwise provided by law."

Section 72 of the Akron City Charter provides that the mayor, not the director of public safety, shall review the suspension or dismissal of a police officer:

" * * * In the event that such suspension and/or recommendation [for reduction in rank or dismissal] is made by the Police * * * Chief, the said Chief shall forthwith, in writing, certify the fact, together with the cause therefor to the Mayor who, within five (5) days from the receipt of such certification, or a later time if agreed to by the officer or employee, shall conduct a hearing on said cause and render judgment thereon within ten (10) days after the hearing, which judgment, if the charge be sustained, may be suspension, reduction in rank, or dismissal; provided, however, that an appeal may be had to the Civil Service Commission from the decision of the Mayor. * * *"

The city has argued that it was not required to follow R.C. 737.12 and have the director of public safety review the dismissal because, pursuant to Section 3, Article XVIII, of the Ohio Constitution, it had authority to provide in its city charter that the mayor, not the director, would review a police officer's dismissal. Section 3, Article XVIII provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

In *State ex rel. Canada v. Phillips* (1958), 168 Ohio St. 191, 5 O.O.2d 481, 151 N.E.2d 722, the relator sought a writ of mandamus to compel the City of Columbus Director of Public Safety to appoint him to the position of deputy inspector in the city police department. He argued that the director had violated a state statute that provided that a municipality must appoint to a position above the rank of patrolman the person who had received the highest score on a civil service examination. This statute conflicted with a section of the city charter that permitted officials to appoint to a position in the classified service a person who was one of the three highest scorers on the civil service examination. The Ohio Supreme Court held that municipalities are not required to follow state

statutes if those statutes conflict with provisions of a city's charter on an issue of local self-government. *Id.* at paragraph three of the syllabus. The court held that the appointment of city police officers was an exercise of local self-government, and, therefore, that the city charter provision prevailed over any state statute that was in conflict with it. *Id.* at paragraph one of the syllabus.

In *Beyer v. Donaldson* (1978), 57 Ohio App.2d 24, 11 O.O.3d 16, 384 N.E.2d 712, police officers challenged their suspension on the ground that the city of Cincinnati had violated R.C. 737.12 by having the city manager, not the director of public safety, suspend them. R.C. 737.12 provided that the director of public safety had the exclusive authority to suspend an officer. The city charter, however, gave the city manager that authority. The court, based on *State ex rel. Canada v. Phillips,* held that the removal and suspension of a city police officer was an exercise of local self-government, and, therefore, that the city was not required to follow a state statute that was in conflict with its charter. *Id.,* 57 Ohio App.2d at 29, 11 O.O.3d at 19, 384 N.E.2d at 715.

■ In this case, the common pleas court incorrectly reversed the decision of the commission on the ground that the city had violated R.C. 737.12 because the city was not required to follow the provisions of that statute insofar as they conflicted with the city charter. Since the removal of police officers is an exercise of local self-government, the city charter provision that empowered the mayor to review an officer's dismissal superseded the provision of R.C. 737.12 that gave the director of public safety that power. The city's first assignment of error is sustained.

## B

The city's second assignment of error is that the common pleas court abused its discretion when it reversed the commission's decision on the ground that the city had violated R.C. 737.12 because the decision was otherwise supported by a preponderance of reliable, probative, and substantial evidence. The city has argued that the standard of review to be applied by the common pleas court was that established by R.C. 2506.04, which provides:

"The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure

and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code."

The city asserts that, pursuant to R.C. 2506.04, the common pleas court had to affirm the commission's decision if it was supported by the preponderance of substantial, reliable, and probative evidence, even if it determined that the city had violated R.C. 737.12 by having the mayor review Williams's dismissal.

■ The Ohio Supreme Court has held that an appeal of a police officer's suspension, demotion, or removal "must be conducted" pursuant to R.C. 124.34. *Chupka v. Saunders* (1986), 28 Ohio St.3d 325, 327, 28 OBR 393, 394, 504 N.E.2d 9, 10. R.C. 124.34 provides:

"In the case of the suspension * * * or removal of * * * any member of the police or fire department of a city or civil service township, * * * [a]n appeal on questions of law and fact may be had from the decision of the municipal or civil service township civil service commission to the court of common pleas in the county in which such city or civil service township is situated. * * * "

In *Cupps v. Toledo* (1961), 172 Ohio St. 536, 18 O.O.2d 82, 179 N.E.2d 70, paragraph two of the syllabus, the Ohio Supreme Court held that "[an] appeal on questions of law and fact from the affirmance by a civil service commission * * * of an order of dismissal of a member of the police department * * * is a trial *de novo* * * *." In a trial *de novo*, the common pleas court must review the record of the proceedings before the civil service commission and conduct " * * * an independent judicial examination and determination of conflicting issues of fact and law * * * [and] determine the facts and give judgment disposing of the issues of law and fact as if no trial had been had in the lower tribunal." *Lincoln Properties, Inc. v. Goldslager* (1969), 18 Ohio St.2d 154, 47 O.O.2d 316, 248 N.E.2d 57, paragraphs one and two of the syllabus.

■ At oral argument, the city conceded that, if R.C. 124.34 is applicable to an appeal from a civil service commission's affirmance of a police officer's dismissal, the common pleas court must conduct a *de novo* review. It argued, however, that R.C. 124.34 was not applicable in this case, because the city charter provides that R.C. 2506.04 is the standard of review. In *Cupps v. Toledo* (1959), 170 Ohio St. 144, 10 O.O.2d 95, 163 N.E.2d 384, the Ohio Supreme Court addressed the enforceability of a provision of a city charter that provided that an employee could not appeal from the civil service commission's affirmance of his suspension or dismissal, even though a state statute expressly conferred that right. The Supreme Court held that a city's power of self-government does not include "the power to regulate the jurisdiction of [the] courts," and, thus, that a city cannot by charter or ordinance impair or restrict the jurisdiction of the courts. *Cupps*, 170 Ohio St. 144, 10 O.O.2d 95, 163 N.E.2d 384, at paragraphs one and two of the

syllabus. Likewise, a provision of a city's charter that provides that a common pleas court shall apply a certain standard of review on an appeal from the civil service commission is not enforceable if that standard of review is different from that which is mandated by statute or precedent.

Since the Ohio Supreme Court has held that, in an appeal from a decision of a civil service commission to the common pleas court on the suspension, demotion, or removal of a police officer, the court shall conduct a *de novo* review, the city's assertion that R.C. 2506.04 governed the court's standard of review is incorrect. The city's second assignment of error is overruled.

## C

The city's third assignment of error is that the common pleas court erred as a matter of law by reversing the commission's decision on the ground that it had violated R.C. 737.12, because Williams had not raised that argument before the commission. In light of this court's determination that the common pleas court incorrectly concluded that the city was required to follow R.C. 737.12, the city's third assignment of error is moot and is, therefore, overruled on that basis.

## D

The city's fourth assignment of error is that the common pleas court incorrectly stated, in its decision, that the city law director had dismissed Williams. The court in its decision stated:

"This court finds, based upon a preponderance of reliable, probative, and substantial evidence that when the Akron City Law Director dismissed Williams, the mandatory procedure set forth in R.C. 737.12 [was] not followed."

The city is correct that its law director did not dismiss Williams. The chief of police recommended the dismissal and the law director, as acting mayor, approved it. Any error arising from this misstatement, however, was harmless. The city's fourth assignment of error is overruled.

## III

The city's first assignment of error is sustained, and its remaining assignments of error are overruled. This matter is remanded to the Summit County Court of Common Pleas for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

QUILLIN, P.J., and REECE, J., concur.