OPINION
Plaintiff-appellant Christopher Giannini ("appellant") appeals from the ruling of the court of common pleas upholding his discharge from the Fairview Park police force.
Appellant assigns the following errors for review:
 I. THE TRIAL COURT ERRED IN FAILING TO CONSIDER THE COMPLETE RECORD OF THE CASE.
 II. THE TRIAL COURT GAVE UNDUE DEFERENCE TO THE DECISION OF THE CITY OF FAIRVIEW PARK CIVIL SERVICE COMMISSION.
 III. THE TRIAL COURT'S DECISION WAS ARBITRARY, UNREASONABLE, AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Finding the appeal to lack merit, the judgment of the trial court is affirmed.
 I.
On November 5, 1993, the Fairview Park Safety Director terminated appellant from his employment as a police lieutenant with over thirteen years of service. On September 30, 1993, appellant had been charged with eight separate violations of departmental rules, policies, and procedures. Appellant appealed his removal to the Fairview Park Civil Service Commission which held a hearing on the matter.
At the hearing, testimony was heard from various witnesses with regard to the charged infractions. The violations concerned incidents which occurred on three separate dates. The first infraction of departmental rules and policies took place on November 25, 1992, when appellant left Fairview Park while on duty and went to his girlfriend's residence in Lakewood. At the time, appellant was the officer in charge of the shift working that night. Appellant had been admonished previously that he was not to leave Fairview Park while on duty. Specifically, on August 23, 1991, appellant attended a staff meeting at which supervisors were told the police department would be adhering to the rules and regulations. A memorandum was distributed later that day which stated the departmental policy that no officer was to leave the city to investigate a crime which could be investigated by the detective bureau at a later date. On April 26, 1992, appellant was absent from Fairview Park while on duty when a fast-food restaurant was robbed. Appellant was interviewing an informant in Brooklyn at the time. On August 25, 1992, appellant left Fairview Park while on duty to take his police vehicle to a car wash in Cleveland. Appellant received a letter stating that, as a shift commander, appellant was to be present within Fairview Park at all times except for the most extreme emergencies. In the event of an emergency, appellant was to notify the dispatcher when he both left and returned to the city.
In the November 25, 1992, incident, appellant averred he planned to meet his girlfriend at her home at 3:00 a.m. for lunch. Appellant did not notify the dispatcher that he was leaving Fairview Park. Upon arriving at his girlfriend's home, appellant noticed a vehicle in her driveway which appellant did not recognize. Appellant's telephone call to the residence went unanswered. Appellant then used the radio in his police vehicle to ask that the vehicle's license plate number be checked in the Law Enforcement Automated Data System ("LEADS") database. Appellant finally left after arguing with his girlfriend.
The second and most serious occurrence took place on February 13, 1993. What exactly happened is disputed by the parties. While on patrol, appellant noticed an automobile drift left of center. Appellant followed the vehicle to a Fairview Park residence without effecting a traffic stop. Once there, appellant and the driver, James Beck, engaged in an argument. Appellant averred that he attempted to place Beck under arrest for driving under the influence and that the two men engaged in a physical altercation before Beck and his passenger, Michael Juhn, entered the residence. Beck and Juhn denied that appellant and Beck fought before Beck went inside.
Beck and Juhn testified that appellant forcefully opened the door and came into the residence. Appellant stated he stuck his foot in the door and pushed the door open. Both agree that once inside, appellant and Beck fought, exchanging punches. The fighting had temporarily ceased when Patrolman Eric Upperman arrived on the scene in response to a radio call for assistance made by appellant. Officer Upperman testified that appellant and Beck were standing, facing one another. Officer Upperman was familiar with Beck and Juhn from prior dealings with both men.
Appellant nodded his head toward Beck and stated that "this one's going." Officer Upperman understood appellant to mean Beck was being arrested. Beck began speaking to Officer Upperman regarding the events. Appellant went around to the back of Beck and mouthed to Patrolman Upperman that Beck was going down. Appellant then put Beck in a choke hold. Beck began struggling and attempting to pull appellant's arm away. Beck's face was turning red as he had difficulty breathing. Upperman grabbed Beck's right arm and told Beck to just go down. The three men fell to the ground where appellant hit Beck several times. Officer Upperman managed to handcuff Beck's right hand but he could not reach Beck's left hand which was underneath Beck's body. Appellant bit Beck in the left arm. Upperman finally managed to place the handcuff on Beck's left hand when appellant kicked Beck's head. Officer Upperman began assisting Beck to his feet. Beck was on his knees when appellant grabbed Beck by the hair and used his knee to strike Beck in the head several times while swearing at Beck. Patrolman Upperman managed to get Beck to his feet and started to escort Beck outside. Appellant opened the door and slapped Beck in the face as Upperman and Beck passed by him.
Appellant testified Beck resisted arrest and fought with appellant prior to Officer Upperman's arrival. Appellant admitted biting Beck, executing a knee strike to Beck's head, and punching Beck in the face twice. Appellant stated Beck was "semi-passive" at the time. Appellant also described his efforts to gain control of Beck by shoving his hand up the top of Beck's nose and putting his fingers in Beck's eyes to turn Beck's head.
After Beck was handcuffed, Officer Abel arrived. Appellant instructed Patrolman Abel to find Juhn who was outside the residence. Abel located Juhn with appellant's assistance. Appellant attempted to explain his constitutional rights to Juhn who repeatedly turned his head away from appellant. Appellant grabbed Juhn by the neck to facilitate his explanation that Juhn was under arrest. Appellant was charged criminally in the matter but was acquitted of the charges.
On March 30, 1993, appellant was restricted to the station until he was placed on paid administrative leave two months later. Appellant went on an extended medical leave from April 1, 1993, to April 13, 1993, due to stress. On April 4, 1993, appellant taught a class at the Cuyahoga Community College. By teaching the class, appellant violated the Fairview Park Police Department's part-time work policy which forbids an officer from working at an off-duty job less than eight hours after taking leave for illness.
The Civil Service Commission upheld the decision of the Fairview Park Safety Director. Appellant filed a notice of appeal to the court of common pleas who affirmed the Civil Service Commission's decision. In Giannini v. City of Fairview Park
(1995). 107 Ohio App.3d 620, this court reversed the decision of the court of common pleas after determining that the wrong standard of review was applied below. On remand, the court of common pleas reviewed the transcripts of the hearing held before the Civil Service Commission, documentary evidence, and pleadings and affirmed the decision of the Civil Service Commission.
 II.
In his first assignment of error, appellant contends the trial court erred by failing to consider the complete record of the case. Appellant refers to the first footnote of the trial court's opinion and order which states:
 The hearing transcript makes reference to some audio tapes, photographs and diagrams which were presented at hearing and apparently considered by the city of Fairview Park Civil Service Commission in its deliberations. These were not included as part of the record but their content is adequately discussed in the testimony. There were also some demonstrations conducted before the Civil Service Commission which this court obviously does not have the benefit of reviewing. Nevertheless, this court finds that the record is sufficiently complete without these additional materials to permit a de nova review of the Civil Service Commission's actions. In addition, the parties have stipulated that the court may rule based on the record as presently constituted.
Appellant asserts that in addition to the audio tapes, photographs and diagrams, numerous other pieces of documentary exhibits and pleadings are missing as well. Appellant argues this proves the trial court did not review the entire record of the case and was unaware of what was missing. Appellant states that without the entire record before it, the trial court could not have performed a de novo review of the case as mandated by law. Appellant asks for a reversal of the instant case so that the trial court can consider all the documents and other evidentiary material which were before the Civil Service Commission. However, appellant never states what or how much evidence was missing from the file.
Appellant relies on Chupka v. Saunders (1986), 28 Ohio St.3d 325, as authority. In Chupka, a police officer's removal was changed by the Civil Service Commission to a suspension without pay. The Director of Public Safety appealed the decision to the court of common pleas. He requested that the entire record, including transcripts of two hearings, be forwarded to the court of common pleas. Later, it was discovered that a transcript of a dispositional hearing had not been transcribed or forwarded to the court of common pleas. The Supreme Court of Ohio held the failure to provide the court of common pleas with the entire record as requested was reversible error.
This court has carefully considered the full transcript of the proceedings before the Civil Service Commission. Each document, photograph, diagram, and demonstration admitted into evidence was described adequately in the record. Unlike Chupka, in which an entire transcript was missing, the portions of the record which were not before the court of common pleas did not prevent the trial court from undertaking a de novo review of the case. The absence of the documents was not fatal to the appeal in the common pleas court as it was in Chupka.
Appellant's first assignment of error lacks merit.
 III.
In his second assignment of error, appellant asserts the trial court did not perform a de nova review of the proceedings before the Civil Service Commission. Appellant points to one sentence in the trial court's nineteen-page opinion in which the trial court stated:
 In assessing the behavior of appellant and the reasons he gave for leaving the city limits on November 25 and taking the action he did, the Civil Service Commission was certainly in the best position to evaluate the credibility of all the witnesses who appeared before it, including the appellant.
Appellant contends that this one statement proves that the trial court failed to conduct an independent examination and determination of conflicting issues of fact but, instead, gave undue deference to the findings of the Civil Service Commission.
A court of common pleas is required to conduct a trial de novo
of the proceedings held before a civil service commission whenever a police officer is removed from his or her employment.Cupps v. Toledo (1961), 172 Ohio St. 536, at paragraph two of the syllabus; Akron v. Williams (1996), 109 Ohio App.3d 848. The evidence must be considered anew as if there had been no proceeding before the commission. Lincoln Properties, Inc. v.Goldslager (1969), 18 Ohio St.2d 154. The court of common pleas may substitute its own judgment on the facts for that of the civil service commission, based upon the court's independent examination and determination of conflicting issues of fact.Newsome v. Columbus Civ. Serv. Comm. (1984). 20 Ohio App.3d 327. The appointing authority must prove the truth of the charges by a preponderance of the evidence. Cupps, supra.
A careful reading of the trial court's opinion and order in the instant case shows that the trial court did indeed conduct a denovo review of the proceedings held before the Civil Service Commission. The testimony of the various witnesses is thoroughly discussed without reference to any factual findings made by the commission with regard to those witnesses. Indeed, the "offending" sentence at issue is part of the trial court's discussion of the events of November 25, 1992, when appellant admitted he left the city limits and proceeded to the residence of his then girlfriend in Lakewood. Appellant acknowledged while testifying that he had received a letter from his superior reminding appellant not to leave Fairview Park except for the most extreme emergencies prior to this incident. By his own admission, appellant admitted the truth of the charge against him.
The statement at issue here is simply an acknowledgment by the court of common pleas of that which is well known to those courts conducting any sort of review of proceedings at which testimony is taken. Those actually observing the witnesses are in a better position to access credibility than a court reading a transcript, whether a de novo review is conducted or a different standard of review is employed. This does not equate with a conclusion that the court of common pleas abandoned a de novo review below. Rather, the trial court simply stated the obvious while carefully considering what each witness testified to before the Civil Service Commission. The trial court applied the correct standard of review.
Appellant's second assignment of error is overruled.
 IV.
Appellant's final assignment of error challenges the decision as being against the manifest weight of the evidence. Appellant again contends that the lower court did not consider the complete record. Appellant argues that the trial court's decision was based upon conflicting versions of what occurred the night of February 13, 1993, at the home of James Beck.
The standard for reviewing whether a civil judgment is against the manifest weight of the evidence was established in the syllabus of C.E. Morris Co. v. Foley Constr. Co. (1978). 54 Ohio St.2d 279. when the court held:
 Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.
This court already has determined that the record before the court of common pleas was sufficient for the court to conduct a de novo review. Further, the evidence presented at the Civil Service Commission hearing was competent and credible enough to support appellant's termination from the Fairview Park Police Department. Appellant admitted that he bit James Beck at a time when Beck was semi-passive. Appellant also stated he used his knee to strike Beck in the side of the head and punched Beck in the face. All of this occurred when Beck was not actively resisting arrest. Appellant also grabbed Juhn by the neck in order to impress upon Juhn, who was being led to a police car, that Juhn was under arrest. The force used by appellant certainly was excessive. The court of common pleas correctly concluded that appellant's conduct during this incident alone supported his termination.
Appellant's third assignment of error lacks merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KRNNETH A. ROCCO, J. and ANNE L. KILBANE, J. CONCUR.
 _____________________________ LEO M. SPELLACY PRESIDING JUDGE